The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. Upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions of law as those reached by the Deputy Commissioner, with some modification. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the undersigned find as facts and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. That the parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. That there existed between the plaintiff and defendant the relationship of employer/employee at all relevant times herein.
3. That the defendant-employer is an approved self-insured with Alexsis Risk Management acting as the servicing agent.
4. That plaintiff's average weekly wages at the time of the alleged injury by accident was $272.93.
5. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment with the defendant-employer on July 20, 1994, the injury being to his back.
******************
Based upon all of the competent, credible, and convincing evidence adduced at the hearing and from the record, the undersigned make the following
FINDINGS OF FACT
1. Plaintiff was thirty-one years old at the time of this hearing. He had completed high school and attended college for two years.
2. Plaintiff first started working for defendant-employer approximately 60 days prior to this incident. Prior to coming to work for defendant-employer, plaintiff had worked mainly in textile plants operating various machinery.
3. On July 21, 1994, plaintiff was performing his normal job when he reached down to pick up a 40 pound cone of yarn off the floor. As plaintiff lifted the yarn he felt a pop in his back. Plaintiff fell to the floor, and he could not move due to the pain.
4. Plaintiff was taken to Gaston Memorial Hospital by ambulance where he was diagnosed as having an acute lumbar sprain. Plaintiff was instructed to stay out of work for at least 24 hours. On the following day, July 22, 1994, plaintiff was seen by Dr. Griffin at Charlotte Orthopedic Specialists.
5. Dr. Griffin agreed with plaintiff's diagnosis of acute lumbar strain, and he held plaintiff out of work until after plaintiff returned to see him on July 27, 1994. Dr. Griffin also placed plaintiff in physical therapy and on medication.
6. Dr. Griffin released plaintiff to return to work on July 28, 1994, with the restrictions of light duty and no lifting over 25 pounds. Plaintiff was instructed to continue physical therapy and return to see him within a week.
7. Plaintiff returned to work on July 28, 1994 in a light duty job sweeping the floor. About thirty minutes before his eight hour third shift was to end on the day he returned to work, he was called into the office of his supervisor and terminated with an explanation of "unsatisfactory job performance." Law enforcement officers were called to remove him from the premises, although plaintiff left peacefully.
8. Plaintiff unsuccessfully attempted to find other work but was unable to find full time employment until the Fall of 1995. Plaintiff has been employed by Phillip Morris since October 1995, and in this position he is earning more than he was earning at the time of his accidental injury.
9. Prior to obtaining the job with Phillip Morris, plaintiff worked in various other positions for which he received a total of $4,178.69 in compensation. This amount was earned during the period after his termination with defendant-employer on July 28, 1994, and until he obtained a position with Phillip Morris.
10. Although defendant provided medical treatment initially, under the circumstances of plaintiff's dismissal, it was reasonable for plaintiff not to know that future medicals would and should be provided and thus to not seek further treatment which he felt he was unable to afford. Therefore, the lack of medical documentation during the period of time of almost fifteen months following his dismissal is not considered persuasive evidence by the undersigned that plaintiff was no longer in need of medical treatment or suffering from disabling back pain. In fact plaintiff was still suffering from on-going back pain. Dr. Griffin has retired since he last examined plaintiff, therefore plaintiff was sent to see Dr. David Dupuy for an independent medical evaluation on September 25, 1996. Dr. Dupuy found plaintiff had reached maximum medical improvement and was working in sedentary type work with Phillip Morris. Dr. Dupuy indicated plaintiff continued to have intermittent pain in his lower back without radicular symptoms and should continue with the exercises he learned while in physical therapy. Dr. Dupuy noted that plaintiff did not retain any permanent partial disability.
******************
Based upon the foregoing stipulations and findings of fact, the undersigned make the following
CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident or specific traumatic incident arising out of and in the course of his employment with defendant-employer on July 21, 1994.
2. As a result of his injury by accident on July 21, 1994, plaintiff was temporarily totally disabled from July 22, 1994, through October of 1994, and entitled to compensation at the rate of $182.04 per week for this period of temporary total disability.
3. From the period of October, 1994 to October 8, 1995, when plaintiff obtained a job with Phillip Morris, plaintiff is entitled to temporary partial disability compensation at the rate of two-thirds of the difference between his former average weekly wage of $272.93 and the weekly wages he earned during that period.
4. Defendant is obligated to pay all medical expenses incurred or which will be incurred as a result of plaintiff's compensable injury that may cure or give relief or tend to lessen plaintiff's disability.
5. Plaintiff retains no permanent partial disability arising out of the compensable injury.
******************
AWARD
1. Subject to attorney's fees hereinafter awarded, defendant shall pay to plaintiff temporary total disability benefits at the rate of $182.04 per week for the period from July 22, 1994 through October, 1994. Further, defendant shall pay plaintiff temporary partial disability compensation at the rate of two-thirds of the difference between his former average weekly wage of $272.93 and the weekly wages he earned during the period. from October, 1994 to October 8, 1995. These accrued amounts shall be paid in a lump sum, subject to the attorneys' fees hereinafter provided.
2. Defendant shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury when bills for same have been submitted to and approved by the Industrial Commission, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. An attorney's fee of twenty-five percent (25%) of the compensation due plaintiff herein is hereby awarded to plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of the lump sum amount due plaintiff shall be deducted and paid directly to plaintiff's attorney.
4. Defendant shall pay the costs of this action.
IT IS FURTHERMORE ORDERED that this case be REMOVED from the Full Commission hearing docket.
This the __________ day of _____________________, 1997.
 S/ ___________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ___________________________ COY M. VANCE COMMISSIONER
S/ ___________________________ MORGAN S. CHAPMAN DEPUTY COMMISSIONER
JHB/nwm